LOTTINGER, Judge.
This is a suit by Roland Gaspard against Leo Sampey, Jr., Ace Ready Mix Concrete, Inc., and National Fire and Marine Insurance Company, for damages for personal injuries suffered by him in an accident on October 28, 1972, when plaintiff’s car was struck in the right rear by the left front of a concrete truck owned by Ace, driven by Mr. Sampey and insured by National. After trial on the merits, judgment was ren *131 dered in favor of plaintiff and against all defendants for $5,330.62. Plaintiff has appealed, praying that the award be increased.
Prior to the accident, plaintiff was a carpenter and the owner of a boat with which he fished for oysters and shrimp. He looked on the fishing as his main source of livelihood. Plaintiff testified that before the accident, he had never had any difficulty with his health.
Immediately after the accident, which happened on a Saturday, plaintiff drove himself to Our Lady of the Sea Hospital in Galliano, Louisiana, where he saw the duty physician. Plaintiff testified that he had a lump on the left side of the neck and numbness in his left arm. The doctor gave him some pills and sent him back to work.
On the following Monday, plaintiff left to do some oyster fishing in Texas. He testified that he had soreness in his left side. On the first day of work on his boat, he had swelling of his neck and soreness in his left arm, and could not carry out all of his duties as captain. On November 3,1972, he consulted Dr. G. W. Cox in Galveston, who diagnosed a cervical strain and put plaintiff on a physical therapy program. On November 8, 1972, plaintiff was found to have a total left sided hypesthesia, but his neurological examination and the range of motion of his neck were within normal limits.
Shortly thereafter, while at the helm of his boat, plaintiff was jerked to the left when a swell hit his boat causing a sharp strain to the muscles of the left neck and shoulders. He saw Dr. Cox on November 22, 1972, who noted “rather bizarre symptoms of blurring vision and weakness on the left side with associated numbness.” Dr. Cox advised him to go into the hospital, because he feared a cervical disc injury. Because plaintiff then returned to Louisiana, Dr. Cox had not seen him again.
Plaintiff saw Dr. John D. Jackson, a neurologist, on December 19, 1972, complaining of headaches, dizziness, a feeling of instability, some decrease in vision and pain in the shoulder, neck and chest. Dr. Jackson found that plaintiff had a completely normal neurological examination. He thought that the dizziness and instability might be due to some middle ear damage. He found no evidence of cervical muscular strain in his examination, but, was of the opinion that plaintiff had probably suffered a cervical strain, and that, in time, his symptoms would subside. He further stated that the episode on the boat, when plaintiff’s neck and shoulder were strained, would have exacerbated his condition and prolonged his recovery. Dr. Jackson prescribed no treatment and did not see plaintiff again.
From January 11, 1973, until the latter part of 1974, plaintiff was treated at the United States Public Health Hospital at New Orleans by Dr. Gary H. Myers, who was the chief of the neurology service. He gave a history of having suffered a whiplash type injury in an automobile accident on October 28,1972, which caused blindness in his left eye for 30 minutes after the accident. Since that time, he told the doctor he had suffered severe recurrent episodes of blurring vision in his left eye, as well as dizziness and instability, and headaches. He had a normal neurological examination, and an eye examination which was within normal limits. He was given medication for his dizziness.
On March 8, 1973, plaintiff’s condition was substantially unchanged, and he was complaining of pain in the left side of his neck and shoulder. On May 7,1973, he was still about the same, and complaining of left shoulder pain, for which additional medication was prescribed. By June 28, 1973, his dizziness had disappeared, but he was complaining of pain on the left side of his neck, radiating up into his head. This pain increased with exercise and work on his boat, and a cervical collar was prescribed.
Throughout the remainder of his treatment, he suffered neck and shoulder pain when working, which subsided when he did not work. He was treated with pain medicine, traction and a cervical collar.
Dr. Myers felt that plaintiff has sustained a severe cervical muscle strain, for which no treatment could be given beyond *132 that already prescribed. He said that any improvement in plaintiff’s condition should have already occurred, and that plaintiff’s prognosis was guarded. He felt that plaintiff’s pain was real and genuine.
Dr. Dexter A. Gary gave plaintiff an orthopedic examination of his neck and shoulder on March 18, 1975, and found it to be completely normal. He could find no objective findings which would account for plaintiff’s neck and shoulder pain.
Plaintiff testified that he was severely restricted in his attempts to work, either as a carpenter or a fisherman, although he continued to try to do so throughout the time after the accident. Although he testified that his income was greatly reduced because of his physical difficulties, the record shows that he earned $4,465.00 in 1971 and $4,510.00 in 1972. In 1973, he had a loss of $425.00 resulting mainly from a drop of about $5,000.00 in his gross receipts from fishing. In 1974, his earnings from carpentry were about $1,900.00 and, from fishing, about $2,850.00, for a net income of some $4,700.00. The gross income from fishing, however, was about $9,300.00, about $4,500.00 less than in 1972. There is testimony that 1973 was a bad year for oyster and shrimp fishing.
Plaintiff further proved special damages of $330.62. We therefore assume that the award of $5,330.62 included the specials plus $5,000.00 for pain, suffering and disability and loss of income, if any.
In order to reach so low a figure in the light of plaintiff’s complaints of continuing pain, the trial judge must have believed that most of plaintiff’s complaints resulted from the accident on the boat in November, 1972, rather than the automobile accident. He may further have been impressed by the fact that neither Dr. Jackson nor Dr. Gary could explain plaintiff’s complaints objectively, and that the history given to Dr. ' Myers did not mention the second injury, and included an episode of blindness in the left eye immediately after the first accident. The latter episode was not related to any other physician who examined plaintiff, nor testified to by plaintiff at the trial.
Considering the great discretion enjoyed by trial judges in cases of this type, and since there is sufficient evidence in the record which would support his conclusion relative to quantum, we find no manifest error in the result reached below.
The judgment appealed from is therefore affirmed, at plaintiff’s cost.
AFFIRMED.